IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


DAVID RUBEN SALAZAR,       §
                             §
      Petitioner,            §
                             §
v.                           §         2:09-CV-0112
                             §
RICK THALER, Director,       §
Texas Department of Criminal Justice,       §
Correctional Institutions Division,       §
                             §
      Respondent.          §


## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Came for consideration the Petition for a Writ of Habeas Corpus by a Person in State

Custody filed by petitioner DAVID RUBEN SALAZAR.  By his habeas application, petitioner

challenges his September 19, 2006 conviction for the felony offense of aggravated sexual assault

out of the 47th Judicial District Court of Potter County, Texas, and the resultant 10-year sentence.

*See State v. Salazar*, No. 51,769.  The undersigned United States Magistrate Judge recommends

petitioner's habeas application be DENIED.


I.
STATEMENT OF FACTS/
PROCEDURAL HISTORY

On June 20, 2005, petitioner was charged by complaint with the felony offense of

aggravated sexual assault of a child.  On November 3, 2005, petitioner was charged by indictment

with the same offense as follows:

> [O]n or about the 1st day of June, 2003 . . . [defendant] did then and there knowingly and intentionally cause the sexual organ of the defendant to penetrate the female sexual organ of [A.M.], a child who was then and there younger than 14 years of age.[1]

Petitioner was initially tried April 17-19, 2006. The jury was unable to reach a unanimous verdict and the trial court declared a mistrial. On September 19, 2006, a second trial was held and the jury found petitioner guilty of aggravated sexual assault as charged and assessed petitioner's punishment at 10 years in the Texas Department of Criminal Justice, Correctional Institutions Division. Petitioner was represented by the same appointed counsel in both trials.

Petitioner was appointed new counsel for his direct appeal to the Court of Appeals for the Seventh District of Texas. After appellate counsel filed an *Anders* brief, petitioner filed a *pro se* brief arguing (1) legal and factual insufficiency of the evidence to support his conviction; (2) prosecutorial misconduct during the State's voir dire of the jury and the State's closing argument; and (3) that the *Allen*[2] charge coerced jurors into reaching a guilty verdict. On October 10, 2007, the state appellate court affirmed petitioner's conviction and sentence. *Salazar v. State*, No. 07-06-0406-CR (Tex.App.–Amarillo October 10, 2007) (unpublished).

On January 4, 2008, petitioner filed a petition for discretionary review of the state appellate court's determination of petitioner's claims. The state appellate court withdrew its October 10, 2007 opinion and, on January 23, 2008, issued a new opinion.[3] In its January 2008 opinion, the

---

[1]In a second paragraph, petitioner was alternatively charged with aggravated sexual assault by sexual organ contact but the State subsequently waived this paragraph of the indictment.

[2]*Allen v. United States,* 164 U.S. 492 (1986).

[3]Other than the inclusion of an additional footnote and introductory paragraph, the appellate court opinions were identical. The additional footnote added the following:

> Appellant points to the testimony of A.M.'s stepmother, who gave an affirmative response to a question asking whether she recall A.M. "Tellin you that [appellant] tried to touch her or was touching her, but that he had never actually penetrated her?" As we have noted, it was the task of the jury to determine the weight to be given this statement among all the testimony the jury heard.

state appellate court summarized the facts as follows:

> The complainant was appellant's stepdaughter A.M.  In May 2005, when A.M. was fourteen years old, A.M. told her aunt that appellant had sexually touched her and had sexual intercourse with her from the time she was eight or nine years old until she was eleven or twelve.  After a report to police, A.M. was examined by a sexual assault nurse.

> By a November 2005 indictment, appellant was charged with aggravated sexual assault of a child under the age of fourteen years.  At the close of pretrial motions, appellant pled not guilty and the matter proceeded to trial in September 2006.

> At trial, the jury heard testimony from four State witnesses, including the victim, A.M.  The defense presented three witnesses.  During jury deliberations, the jury reported it was unable to reach a verdict.  Following an "Allen charge" from the court, the jury returned a unanimous verdict of guilty.

*Salazar v. State*, No. 07-06-0406-CR at 2.  (footnotes omitted)

In addressing petitioner's legal and factual sufficiency arguments, the state appellate court

determined:

> The State's four witnesses were the Amarillo police officer who took A.M.'s initial complaint, A.M., A.M.'s aunt and the sexual assault nurse examiner.  A.M. was sixteen at the time of trial.  Her testimony about appellant's sexual contact with her was not especially detailed, but did include direct statements that on various occasions appellant put his penis in her vagina.

> The nurse examiner testified regarding her examination of A.M. and the report she created regarding A.M.  The report, which was admitted without objection, also recited A.M.'s statement that appellant "raped" her when she was younger, providing additional details.  The nurse testified that all of her findings were consistent with A.M.'s history, consistent with what A.M. told her, and consistent with multiple penetrations of A.M.

> Appellant's trial counsel offered the testimony of A.M.'s stepmother, A.M.'s mother and A.M.'s grandmother.  Each of these witnesses expressed disbelief of A.M.'s allegations.  While some asserted that appellant lacked the opportunity to commit the offenses A.M. alleged, the witnesses presented virtually no direct evidence contrary to the verdict.

> The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony.  Likewise, "reconciliation of conflicts in the evidence is within the exclusive province of the jury."  The jury may choose to believe some testimony and disbelieve other testimony.  The jury's apparent belief of the

testimony of the State's witnesses does not raise an arguably meritorious issue
concerning the legal and factual sufficiency of the evidence supporting the jury's
verdict.

Neither does the record raise an arguably meritorious issue with regard to the jury's
assessment of punishment.  Pursuant to the Penal Code, an individual adjudged
guilty of a first degree felony, as here, is to be punished by imprisonment for life or
for any term of not more than 99 years or less than five years.  Further, a fine may be
imposed in an amount not greater than $10,000.  The jury assessed punishment
against appellant at ten years, well within the statutory range.

*Salazar v. State*, No. 07-06-0406-CR at 5-6 (citations omitted) (footnotes omitted).

In addressing petitioner's claim of prosecutorial misconduct, the state appellate court

stated:

The record reflects . . . appellant did not object at trial to the prosecutor's voir dire
statements or those made during closing argument.  Because a complaint to the trial
court was a prerequisite to such a complaint on appeal, appellant's second point
cannot present an arguable ground for appeal.

*Salazar v. State*, No. 07-06-0406-CR at 5-6 (citations omitted).

In addressing petitioner's argument that the *Allen* charge given to the jury coerced the jury

into reaching a guilty verdict, the state appellate court held:

First, in both civil and criminal cases, courts have found similar charges not to be
coercive.  Second, because no objection was made to the trial court's *Allen* charge,
appellant would be required to show that it caused him actual "egregious harm,"
effectively denying him a fair trial.  From our review of the record, such a contention
would not be meritorious.

Both the United States Supreme Court and the Texas Court of Criminal Appeals
have accepted the use of a supplemental *Allen* charge.  Here, the trial court gave a
version of the Allen charge to the jury, addressing the jury as a whole and
encouraging them to reach a verdict if they can do so without violating their
conscience.

*Salazar v. State*, No. 07-06-0406-CR at 5-6 (citations omitted).  The state appellate court

determined, after an independent examination of the record, that petitioner had not raised any non-

frivolous grounds and affirmed the conviction.  Petitioner did not file a petition for discretionary

review of the state appellate court's substituted opinion to the Texas Court of Criminal Appeals.[4]

On November 21, 2008, petitioner filed a state application for a writ of habeas corpus alleging the following grounds:

1.     The evidence was insufficient to support petitioner's conviction;

2.     Petitioner was denied effective assistance of trial counsel; and

3.     Petitioner was denied effective assistance of appellate counsel.

*Ex parte Salazar*, No. 71,312-01.  In its answer, the State argued petitioner's sufficiency of the evidence ground was raised on direct appeal and, thus, should not be reconsidered during state habeas corpus proceedings.  The State also argued petitioner had failed to demonstrate, by a preponderance of the evidence, that trial counsel was ineffective, and that the appellate court had found petitioner's appellate counsel had informed petitioner of his right to file a petition for discretionary review and, thus, was not ineffective.  On March 4, 2009, the Texas Court of Criminal Appeals denied petitioner's habeas application without written order.

On April 27, 2009, petitioner filed this federal application for a writ of habeas corpus challenging his conviction on the same grounds raised on appeal and on state habeas review.[5]

II.
PETITIONER'S ALLEGATIONS

Petitioner contends he is confined in violation of the Constitution and laws of the United States for the following reasons:

1.     The evidence was insufficient to support petitioner's conviction;

---

[4]Petitioner filed a petition for discretionary review challenging the state appellate court's October 10, 2007 opinion. Such petition was dismissed by operation of law when the state appellate court issued its January 23, 2008 opinion in place of the original opinion. *See* Tex. R. App. Proc. 50 (2008).

[5]Petitioner's habeas application was received June 22, 2009.

2.      Petitioner was denied effective assistance of counsel at trial because counsel:

      a.      had a conflict of interest;

      b.      failed to consult with petitioner;

      c.      failed to subpoena certain witnesses;

      d.      conducted an ineffective voir dire;

      e.      failed to object to hearsay;

      f.      failed to adequately cross-examine certain witnesses;

      g.      prevented petitioner from testifying;

      h.      failed to object to, or request a limiting instruction, regarding extraneous acts;

      i.      failed to move for a directed verdict;

      j.      presented an inadequate closing argument;

      k.      failed to object to the trial court's *Allen* charge; and

      l.      failed to file a motion for new trial or a notice of appeal, and/or failed to advise petitioner of his right to appeal.

3.      Petitioner was denied effective assistance of counsel on appeal because counsel failed to:

      a.      raise a ground of insufficient evidence on appeal; and

      b.      advise petitioner of his right to file a petition for discretionary review.

III.
STANDARD OF REVIEW

Section 28 U.S.C. § 2254(d) provides a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless that person first shows the prior

adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Petitioner filed a direct appeal and subsequently filed a state habeas application challenging the constitutionality of his conviction and sentence on the same grounds he asserts in this federal habeas proceeding.  On direct appeal, the state appellate court found petitioner's claims did not have arguable merit or were not adequately preserved for appeal, and affirmed petitioner's conviction.  *Salazar v. State*, No. 07-06-0406-CR.  Petitioner also presented his claims to the highest state court, the Texas Court of Criminal Appeals, in a state habeas corpus petition.  That court denied petitioner's habeas application without written order.  *Ex parte Salazar*, No. 71,312-01.  The ruling of the Texas Court of Criminal Appeals constituted an adjudication of petitioner's state habeas corpus claims on the merits, *see Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999); *Ex parte Torres,* 943 S.W.2d 469 (Tex.Crim.App. 1997) (under Texas law a denial by the Court of Criminal Appeals signifies the court addressed and rejected the merits of the claims),  except for petitioner's "no evidence" claim *(see Section IV. infra)*.[6]  Therefore, the deferential standard set forth in 28 U.S.C. § 2254(d) is applicable to this case and must be demonstrated by petitioner. Consequently, this Court's review is limited to a determination of (1) whether petitioner has shown

---

[6]The term "adjudication on the merits" in 28 U.S.C. § 2254(d) addresses whether the state court's disposition of the claim at issue was procedural or substantive.  *Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir.2002) ( *en banc* ).  Nothing in this case suggests the Texas Court of Criminal Appeals disposed of petitioner's claims on a procedural basis.  *See Barrientes v. Johnson,* 221 F.3d 741, 778-80 (5th Cir.2000), *cert. dismissed,* 531 U.S. 1134 (2001) (setting forth analysis to determine whether state court adjudication was merits-based).  The state court denial qualifies as a full and fair review of the grounds raised therein.  This Court must treat the state court's "denial" as a merits adjudication of petitioner's state habeas application.  *See Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).

the state court's determination that petitioner's claims were without merit was based on an

unreasonable determination of the facts in light of the evidence before the state court, or (2) whether

petitioner has shown the state habeas court's decision was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United

States.

## IV.
## "NO EVIDENCE" OR INSUFFICIENT EVIDENCE CLAIM

By his first ground, petitioner argues "there is <u>no</u> <u>evidence</u> so support the judgment of

conviction" because "the State failed to elicit any testimony . . . to support the offense alleged in the

indictment."  (emphasis added).  Specifically, petitioner complains there was "no evidence" to

support his conviction because "the complainant failed to testify to any particular event, or

otherwise describe an incident that could be said to be the offense alleged in the indictment.

On appeal, petitioner, acting *pro se*, challenged the "legal and factual sufficiency" of the

evidence to support his conviction.  The state appellate court found such claims did not have

arguable merit.  Petitioner again raised his legal and factual sufficiency arguments in a petition for

discretionary review, however, that petition was dismissed by operation of law when the

intermediate state appellate court substituted its January 23, 2008 opinion for its October 10, 2007

opinion.  Due to its dismissal, the original petition for discretionary review was never assigned a

cause number or presented to the Texas Court of Criminal Appeals and that court made no

determination on the merits of the claims raised therein.  After the state intermediate appellate court

entered its 2008 decision affirming petitioner's conviction, petitioner did not seek another petition

for discretionary review raising legal and factual insufficiency claims.

In Texas, sufficiency of the evidence to support a conviction is only reviewable on direct

appeal and such a claim is not cognizable in state habeas proceedings. *Ex parte McWilliams*, 634 S.W.2d 815, 818 (Tex.Crim.App. 1980). There is, however, a "no evidence" exception to the general rule in Texas that the sufficiency of the evidence may not be collaterally attacked. *Ex parte Williams*, 703 S.W.2d 674, 679 (Tex.Crim.App. 1986). Consequently, in his state habeas application, petitioner raised a claim that there was "no evidence" to support his conviction. Although petitioner used the language "no evidence" to assert his claim, the claim was actually a sufficiency of the evidence claim rather than a true no evidence claim and was necessarily construed as such.[7] The Texas Court of Criminal Appeals denied petitioner's state habeas application without written order. Where a Texas state habeas petitioner's insufficient evidence claim is denied without written order, the claim is denied because the claim is not cognizable rather than on the merits. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex.Crim.App. 2004) (the court can never consider the merits of a sufficiency of the evidence claim) (*see supra, pp. 7-8*). Consequently, the Texas Court of Criminal Appeals has never been properly presented with petitioner's sufficiency of the evidence claim nor has that court made a determination on the merits of such claim. Therefore, to the extent petitioner argues there was "no evidence" or, more accurately, that the evidence in this case was insufficient to support his conviction, such claim is unexhausted and procedurally barred.[8]

Even if this Court were to consider petitioner's claim of insufficient evidence, such claim

---

[7]Petitioner could not, in good faith, assert the charges against him were so totally devoid of evidentiary support as to render his conviction unconstitutional under the Due Process Clause or that his conviction did not rest on any evidence at all. *Cf. Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *Ex parte Williams*, 703 S.W.2d 674 (Tex.Crim.App. 1986).

[8]To the extent petitioner argues the default of his claim was due to ineffective assistance of counsel on appeal, the undersigned notes the default was due to petitioner's failure to re-file his petition for discretionary review after the state appellate court substituted its opinion rather than any deficiency during appeal. To establish sufficient cause for a procedural default based on ineffective assistance of counsel, a petitioner must demonstrate ineffective assistance of counsel in a constitutional sense. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Petitioner was not entitled to counsel on discretionary review, *Ross v. Moffitt*, 417 U.S. 600, 619 (1974), thus, he cannot establish ineffective assistance of counsel or establish cause for his failure to properly present the claim in a petition for discretionary review.

would be denied.  For purposes of federal habeas corpus review, a state conviction need only satisfy the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  To determine the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt."  *Id.* at 318-19, 99 S.Ct. at 2789.

In making this determination, the reviewing court must resolve all credibility choices and conflicting inferences in favor of the fact finder.  *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822, 121 S.Ct. 65, 148 L.Ed.2d 31 (2000).  It is the fact-finder's responsibility alone "to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.  The reviewing court must determine if the evidence is constitutionally sufficient to support the conviction, *i.e.*, whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law."  *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991).

Petitioner contends the evidence was insufficient to prove any of the elements of the offense charged.  Specifically, petitioner contends the evidence was not sufficient to prove, to the jury, that the alleged offense was committed in Potter County, that the complainant was less than 14 years of age when sexually assaulted, that there was penetration of the complainant's sexual organ by petitioner's sexual organ, or even that a crime was actually committed (no evidence of a specific event, incident or act that could be considered the offense charged).

There was, in fact, sufficient evidence to support a conviction for the crime of aggravated sexual assault.  Although the state court of appeals found the complainant's testimony was not especially detailed, the court also found the complainant gave direct statements that petitioner

penetrated her, *i.e.*, put his penis in her vagina, on various occasions.  This testimony, along with the evidence that such occurred in Potter County, Texas, at a time when the complainant was under 14 years of age, was sufficient to establish the elements of the offense.  What petitioner actually appears to be arguing is that the evidence did not establish the offense alleged in the indictment because the complainant never testified to a specific date when these acts happened.  That issue is discussed in more detail at pages 29 - 32 of this Report and Recommendation, but it is sufficient, at this point, to say that the evidence was adequate to establish the offense occurred "on or about" the date alleged.  *See Garcia v. State,* 981 S.W.2d 683, 685 (Tex.Crim.App.1998) (the State is not bound by the date alleged in the indictment as long as it proves the offense occurred within the period covered by the applicable statute of limitations); *see also* Tex.Code Crim. Proc. Ann. art. 21.02 (West 2009) (time mentioned must be anterior to presentment of indictment and not so remote that offense is barred by limitations).

While the evidence did not establish the exact dates of sexual contact, the jury apparently believed the testimony of the State's witnesses demonstrated each of the elements of the charged offense in applying the jury instructions.  Resolving all credibility choices and conflicting inferences in favor of the fact finder, and viewing all the evidence in the light most favorable to the prosecution, the undersigned finds petitioner has failed to show the state appellate court's denial of his insufficiency of the evidence claim was based on an unreasonable determination of the facts or an unreasonable application of federal law.  The undersigned finds the evidence was legally sufficient, under federal standards, to support petitioner's conviction for aggravated sexual assault. Petitioner's claim of legal insufficiency is without merit and should be DENIED.

V.
## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his answer, respondent has set forth the proper standard under *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) and its progeny for reviewing claims of ineffective assistance of counsel in federal habeas corpus proceedings.  Petitioner's claims are analyzed under that standard.

### Conflict of Interest

Petitioner initially contends he was denied effective assistance of trial counsel, arguing counsel "refused to subject the prosecutions case . . . to a meaningful adversarial testing" because "counsel harbored a personal aversion" to representing petitioner.  In his reply, petitioner attempts to clarify his claim by asserting a conflict of interest was demonstrated by the other 16 instances of deficient performance petitioner alleges.  Petitioner maintains the entire record reveals a pattern demonstrating counsel refused to defend petitioner due to his disdain of petitioner.

Petitioner has not presented any evidence to support this claim, utterly fails to show trial counsel had any conflict of interest, that trial counsel's representation of petitioner was deficient due to any conflict of interest, or that petitioner was prejudiced by any conflict of interest.  To the extent, if any, petitioner claims cumulative error exemplified an existing conflict of interest, petitioner's claim is conclusory and fails to state a claim upon which relief can be granted.  Moreover, petitioner has failed to show the state habeas court's denial of this claim was unreasonable.  This ground should be DENIED.

### Consultation with Petitioner

Petitioner next argues he was denied effective assistance of counsel because trial counsel refused to consult with him regarding the defense and/or trial strategy and refused to allow him to

participate in trial preparation.  Petitioner maintains that additional consultation would have better prepared trial counsel for questioning the witnesses to show petitioner was never alone with the complainant and thus had no opportunity to commit the assaults, and that no one witnessed the assaults.  In his reply, petitioner maintains the prior trial for the same offense resulted in a mistrial because there was "no testimony of a specific incident, hence no corpus delicti."  Petitioner argues the lack of consultation with regard to the second trial resulted in a detrimental result contrary to that from the prior trial.

Petitioner's claim that counsel was deficient for failing to further consult with petitioner regarding cross-examination of the witnesses and that petitioner was harmed by this failure to further consult is conclusory.  In addition, petitioner's counsel had the benefit of seeing the State's entire case against him prior to trial.  Petitioner has not alleged any surprises or new evidence were offered during the second trial that were not offered during the first trial.  In fact, petitioner has provided no factual or evidentiary support to show trial counsel's consultation with petitioner was inadequate, that further consultation would have resulted in a different or more effective cross-examination of the witnesses, or would have resulted in the pursuit of alternative defenses.  In the second trial, counsel pursued the trial strategy of showing lack of opportunity for the assaults and lack of eyewitnesses to substantiate the complainant's allegations of the assaults.  Petitioner's bald assertions that further consultation with petitioner would have adequately established these components of his defense is entirely speculative.  The complainant testified to the sexual assaults, made statements of the sexual assault to an outcry witness and an examining nurse, and testified the assaults occurred when no other witnesses would be present.  The jury chose to believe the complainant's version of the events and petitioner has not shown further consultation with trial counsel would have changed the jury's decision.

Petitioner's claim is also contradicted by the record in that petitioner acknowledged, at trial, that he had talked with trial counsel "for quite a while."  Vol. 3, at 124.  "Brevity of consultation time," by itself, does not support a claim of ineffective assistance of counsel.  *Mattheson v. King*, 751 F.2d 1432, 1439 (5th Cir. 1984).  Moreover, petitioner has not met his burden under the AEDPA of showing the state habeas court's denial of this claim was unreasonable.  Petitioner's ground should be DENIED.

<u>Subpoena of Witnesses</u>

Petitioner argues he was denied effective assistance of counsel because trial counsel "refused to contact, interview or otherwise subpoena two witnesses, Jessica McKinley [and] Fredrick Paschall," the complainant's sister and petitioner's brother-in-law, respectively.  Petitioner contends "these two witnesses could have collectively testified to the conditions of the residence in regards to any opportunity for any sexual activity between the complainant and the accused."  Petitioner contends Jessica McKinley testified during the first trial that she lived with and visited petitioner every time the complainant did, even sharing a room, and that she never noticed any signs of any type of sexual activity or the complainant cutting on her arm.  Petitioner concludes counsel's failure to subpoena McKinley for the second trial "prevented the jury from hearing from a witness that was with the complainant at every visit to the petitioner's home."   Petitioner contends these witnesses were critical to his defense, counsel knew the importance of the witnesses, especially considering counsel had no other witnesses or rebuttal evidence, and counsel's failure to subpoena the witnesses was unreasonable, prevented petitioner from rebutting the State's claims, and resulted in petitioner's conviction.

Complaints of uncalled witnesses are not favored on federal habeas corpus.  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  To support a claim of ineffective assistance of

counsel due to uncalled witnesses, a petitioner must prove the complained of witnesses were willing and able to testify, as well as what the witnesses would have testified to. *Id.* With regard to Paschall, petitioner has failed to show either requirement. With regard to McKinley, while petitioner asserts she testified in the first trial and alleges what her testimony was during that trial, he has not shown the witness was willing and able to testify in the second trial. The record is not conclusive why McKinley, if she did, in fact, testify for the defense in the first trial, did not testify in the second trial, although some of the trial testimony indicates McKinley was on active duty military service during the second trial.

In any event, the decision not to call certain witnesses is a strategic decision which should be accorded deference. Here, petitioner claims the McKinley and Paschall would have testified petitioner did not have opportunity to sexually assault the complainant as she alleged. Petitioner has not shown such testimony would not have been cumulative of testimony elicited from the complainant's mother and grandmother. Petitioner cannot establish counsel was deficient for not calling the additional witnesses. *See Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988) (finding trial counsel was not ineffective for failing to call witnesses to testify to cumulative evidence).

Petitioner has not shown counsel's decision not to subpoena Jessica McKinley or Fredrick Paschall was deficient. Moreover, petitioner has not shown he was prejudiced by the failure to call McKinley and Paschall to testify by showing the result of the case would have been different if these witnesses had testified. Lastly, petitioner has not met his burden under the AEDPA of showing the state habeas court's denial of this claim was unreasonable. Petitioner's ground should be DENIED.

<u>Voir Dire</u>

Petitioner argues he was denied effective assistance of counsel because counsel failed to conduct an effective voir dire, to wit:  he failed to properly question the jury panel "regarding the State's burden of proof" (or failed to correct a misstatement by the State concerning its burden of proof), failed to inquire of possible biases the jury may have, and conceded petitioner's guilt.  In his memorandum, petitioner appears to argue counsel's voir dire was ineffective because he did not:

1.      Inquire whether any juror knew or was related to any of the State's witnesses;

2.      Inquire whether any of the jurors were particularly biased toward the offense;

3.      Enlighten the panel of the State's burden of proof;

4.      Question the jurors as to their position on a defendant who does not testify in his own behalf;

5.      Inquire as to the juror's ability to follow the law in relation to extraneous matters;

6.      Inform the panel of the essential elements of the offense;

7.      Explain the degree of evidence necessary to convict; or

8.      Correct misrepresentations of the law advanced by the prosecution.

In his reply, petitioner attempts to further clarify his claim by arguing counsel did not advise the panel what the State was required to prove, did not discuss the elements of the offense, did not alert the panel that extraneous matters would be presented, and did not question the panel whether their decisions would be affected by petitioner's failure to testify.  Petitioner contends counsel's voir dire examination of the jury panel was so inadequate that he was not able to exercise his challenges intelligently and, thus, was forced to take "pot luck" from the jury panel.

During voir dire, the State prosecutor asked the jury panel whether they could consider the full range of punishment.  After several jurors indicated they could not assess probation for a

defendant convicted of aggravated sexual assault, one juror advised he "would lean heavy on punishment" for such an offense.  Vol. 2 at 28-30.  To clarify the juror's position, the State prosecutor stated:

> Do you remember what I said about leaning? . . .  Leaning – how many of you are for having sex with children?  How many of you?  Raise your hands?  Well, come on.  Which ones of you are leaning that way?  If we're going to lean, I can't get a fair jury, nobody can get a fair jury.  Do you see what I mean, [prospective juror]?  Leaning – I am assuming you all are against killing, aren't you?  And you are against – you are against serious crimes against people?  That's – that's why we have these laws.  So I understand leaning.  My question is – well, let me ask you this.  *Are you leaning towards making sure that an accused is really guilty? . . .  Are you leaning towards making sure that an accused is really guilty before we sentence them to jail?  Is it important to you that – not just that we accuse them, but that we show that they're guilty?*

Vol. 2 at 30 (emphasis added).  When the juror replied "yes," the prosecutor responded:

> *Okay.  Well, now you are leaning against me.*  I don't know if I can – do you see what I am saying to you? *I expect you-all to lean against crime, lean towards fairness, lean against hurting people, lean towards truth.  That's what I expect citizens to do.*  And unfortunately – how many of you are parents?  How many of you are parents of multiple children?  More than one?  Guess what?  You've got to make some decisions about which one broke the cookie jar every once in a while.  Right?  And I don't like that, you know, but that's what we have to do.  And so that's my deal.
>
> So let me ask you, [prospective juror] – because I understand the leaning, but I expect that.  I expect you – you know, my first blush is – on a lot of crimes is, well, if they were guilty I would probably be really harsh.  Then you start finding out maybe some mitigating things about that individual.  At the punishment phase, you start finding out some other things that – you know.  The law says just wait until you hear everything.  And if what happens deserves to be harsh, there is nothing unfair about that.  And if what happens there in your mind deserves to be lenient, there is nothing unfair about that either.  What is unfair is to make the decision before you hear the evidence.  That's how we'll do it.

The prosecutor then confirmed that the prospective juror could wait until after hearing all of the evidence before determining whether he thought the offense deserved a harsh punishment instead of choosing to "lean heavy on punishment" before hearing any evidence.  Petitioner interprets the above-italicized statements of the prosecutor to be a comment "that to hold the state to its burden of

proof was leaning against the state" and that trial counsel was ineffective for failing to correct this misstatement of the law.  The undersigned does not find such petitioner's interpretation is valid.

As noted above, the above-quoted statements were made in the context of whether the jury panel could consider the full range of punishment for the charged offense.  Petitioner has not shown the statements were likely to leave any "false impression" on the jury concerning the State's burden of proof in the guilt/innocence phase of the case, much less an erroneous statement of the law that counsel was deficient for not correcting.  Subsequent to these statements, the prosecutor stated, "I want 12 citizens that believe in this system, that believe in fairness, believe in truth, will be fair to the Defendant and listen to everything.  Will only say he is guilty if they believe he is and will punish according to the facts as they see them . . . ."  Vol. 2 at 40.  The prosecutor also stated, "You need to think about can you – can you put everything aside and be fair and listen to the evidence and make your decisions on the evidence and keep your mind open to everything and don't shut anything out."  *Id*.  The prosecutor also advised, "They [the defense] don't have to present anything."  The prosecutor then stated:

> Okay,   The Defense – I don't know who their witnesses may or may not be because they don't have to put anything up.  They don't have to say a word.  They can sit quietly through the whole thing.  Why is that?  And here is why.  Because we have the burden to prove to you a person is guilty.  The accusing party should prove that somebody's guilty.  It's not enough to accuse. . . .  Because of that, the State has the burden of proof.  That means that we must convince you with our evidence on a burden called beyond a reasonable doubt.  Vol. 2 at 44.

Thereafter, the prosecutor properly defined the State's burden of beyond a reasonable doubt and extensively covered the defendant's presumption of innocence and how each of the elements of the offense must be proven by the State beyond a reasonable doubt .  Vol. 2 at 44-55.  Moreover, during his voir dire of the panel, defense counsel again addressed the presumption of innocence and detailed the State's burden to prove guilt beyond a reasonable doubt.  Vol. 2 at 74-76. Petitioner has

not shown any misconception as to the State's burden of proof existed with the jury panel or the actual jury eventually selected or, if any misconception initially existed, that it was not corrected by the remainder of the voir dire by both the prosecution and the defense or by the judge's introductory comments.  Vol. 2 at 102.  Petitioner's claim should be DENIED.

Petitioner also asserts trial counsel failed to question the jury panel as to any biases which may have existed.  In his reply, petitioner attempts to clarify he is specifically complaining of counsel's failure to (1) examine the jury panel regarding biases against the offense of aggravated sexual assault, (2) determine the potential jurors' "disposition on a defendant that didn't testify," and (3) "to enlighten the jury as to the specific burden of proof owed to the offense."

While petitioner alleges counsel should have questioned the jury regarding biases against the charged offense, petitioner does not identify a particular bias about which counsel should have inquired and does not suggest specifically what counsel should have asked the panel.  Nor does petitioner demonstrate how he was prejudiced by any failure of counsel to conduct this additional questioning, nor has he shown any member of the jury was biased against him.  Petitioner's allegation is conclusory.  During voir dire, the state court advised the panel of the nature of the charges and the range of punishment and confirmed that each member of the panel could consider the full range.  The State prosecutor also questioned the panel extensively as to whether anyone had been personally affected by allegations of sexual abuse and whether that caused them to "lean" toward the side of the complainant or the defendant.  The prosecutor extensively questioned the jury whether they could consider probation as an appropriate sentence.  The prosecutor advised that because the defendant is presumed innocent, the defense does not have to present or "say" anything and "are not compelled to testify against themselves."  Vol. 2 at 55.  The prosecutor detailed the right to remain silent, that the panel could not hold the exercise of that right against the defendant,

and clarified that no one had a problem with the defendant not testifying, would not hold it against the defendant for not testifying, and would not even consider the absence of the defendant's testimony.  Vol. 2 at 55-56.  In fact, the prosecutor thoroughly addressed most areas of inquiry reflecting bias in favor or against either party, as well as the ability to properly fulfill all aspects of the role of a juror in a criminal case.  It was not necessary for defense counsel to repeat all of the areas addressed by the prosecutor.

Defense counsel questioned the panel as to whether anyone was acquainted with a person who had been falsely accused of aggravated sexual assault, the State's burden of proof, the credibility of the witnesses, the effect of time on a witness's recollection, and the jury's obligation to be fair and impartial.  Counsel again advised the jury that the defense did not have a burden of proof, that petitioner may or may not testify depending on whether counsel believed it would be beneficial after hearing all of the evidence, and that if counsel did not put petitioner on to testify, that the jury could not hold that against him.  Vol. 2 at 82-83.  Defense counsel also inquired whether anyone on the panel could not consider the full range of punishment, including probation.

Review of the entire voir dire by both the State and defense counsel reflects a thorough, comprehensive and balanced inquiry of the jury panel.  Defense counsel's re-hashing of the inquiries made by the State would not have benefitted petitioner.  Similarly, while there are certain inquiries identified by petitioner which were not made by either side, *i.e.*, the ability to follow the law in relation to extraneous matters, the undersigned does not find that defense counsel's failure to specifically question the jury panel on each topic identified by petitioner renders the entire voir dire ineffective.  Petitioner has not shown any additional inquiries would have resulted in a different jury or would have resulted in a different result in the trial.

Lastly, toward the close of voir dire, defense counsel stated the following:

Okay.  At the end of this case when you go back there to deliberate, it's not going to be an easy task.  As the prosecutor told you and has mentioned to you, it's not easy to decide someone's fate.  So we need 12 of you that can enter this endeavor with an open mind that will give both the State and Mr. Salazar a fair trial.  *And several of you have indicated when it came to punishment that you couldn't consider that full range of punishment.  Now, of course me as Mr. Salazar's advocate, we don't anticipate getting to punishment, but we need to visit about it because it's important to be a juror that you have to consider the full range of punishment.*

Vol. 2, at 86 (emphasis added).  Counsel then elicited direct answers from the potential jurors as to whether they could consider probation in an aggravated sexual assault case, eliminating several potential jurors for cause.  Petitioner contends the above statement by trial counsel amounted to a concession of petitioner's guilt during voir dire and, therefore, rendered counsel's performance deficient and prejudiced petitioner.

Petitioner has not shown, and the undersigned does not find, the statements by defense counsel were a concession of petitioner's guilt.  Moreover, to eliminate for cause those venirement who had indicated, during the State's voir dire, that they did not believe they could consider assessing probation in the event petitioner were found guilty, counsel had to discuss the possibility of reaching the punishment stage of the trial and the ability of the potential jurors to consider the full range of punishment, including probation.  Petitioner has not shown counsel's statements or discussion of the full range of punishment was deficient, nor has petitioner shown he was prejudiced by any such statements.  Petitioner's claim should be DENIED.

<u>Hearsay Testimony</u>

Petitioner argues he was denied effective assistance of counsel because trial counsel failed to object to the testimony of the State's outcry witness as hearsay.  Specifically, petitioner contends counsel should have objected to the testimony of Tracy Deluna because she was not a competent

outcry witness because the complainant did not describe details of the sexual abuse to Deluna when she made the outcry.

In Texas, an outcry witness is "the first person, 18 years or older, to whom the child makes a statement that in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88 (Tex.Crim.App. 1990).  Deluna testified the complainant told her petitioner had "touched her" sexually "several times" when she was young and when she would visit petitioner. Vol. 2 at 128-33.  Such outcry statements are sufficiently descriptive to indicate a sexual assault. Petitioner has not demonstrated Deluna was not a competent outcry witness due to any lack of specificity in the complainant's statements.  Consequently, petitioner has not shown trial counsel was ineffective for failing to make an objection to her testimony.  Any objection would have been without merit.

Moreover, in Texas, admission of inadmissible hearsay resulting from the incorrect designation of an outcry witness is harmless error if other evidence, admitted without objection, proves the same fact the inadmissible evidence sought to prove.  *Elder v. State*, 132 S.W.3d 20, 27 (Tex. App.–Fort Worth 2004, pet. ref'd).  Here, the jury heard admissible testimony directly from the complainant, and to a certain extent the examining nurse, wherein the complainant accused petitioner of sexually abusing her when she was younger, the same topic Deluna's testimony addressed.  Any error in the admission of Deluna's testimony would have been considered harmless. This ground should be denied.

## Cross-Examination of Witnesses

Petitioner argues he was denied effective assistance of counsel because trial counsel failed to adequately cross-examine the complainant and failed to adequately conduct direct examination of Gina Salazar, the complainant's mother.  Petitioner contends "counsel was clearly intentionally

evading all of the critical issues" when cross-examining the complainant.  Specifically, petitioner maintains counsel failed to question the complainant concerning the varying incidences of abuse she had identified during different interviews, failed to "cross-examine the complainant in regards to exactly where, when and how the assault alleged in the indictment occurred," testimony petitioner argues was necessary to prove a specific incident said to represent the offense alleged in the indictment, and failed to question the complainant regarding the specific "address, time, and location" of the offense charged in the indictment, issues "critical to the defense of the case." Petitioner also contends counsel was deficient for failing to question the veracity of the complainant's trial testimony that sexual intercourse with petitioner, despite her young age, was "pleasant."  Petitioner further contends counsel knew, from the first trial, that there were no disagreements between petitioner and the complainant existing at the time the accusations were made and, thus, counsel should have investigated and questioned the complainant concerning an ongoing homosexual relationship in which she was involved at the time of trial to demonstrate the complainant's "overall disposition against men."  Petitioner concludes counsel failed to discredit the "complainant's testimony" or expose her bias due to these deficiencies in cross-examination.

Petitioner contends counsel was also deficient in his direct examination of defense witness, Gina Salazar, petitioner's wife and the complainant's mother.  Petitioner contends counsel mishandled her testimony, thereby allowing the State to transform her testimony into a "character reference for the complainant that served to bolster the credibility of the State's case."

Petitioner's claims are without merit.  Counsel's cross-examination of the complainant challenged her credibility, questioned petitioner's opportunity to commit an assault, raised complainant's other detailed allegation of her mother's prior boyfriend assaulting her, and called into question whether there was actually penetration as required by the indictment.  Although

petitioner contends the cross-examination of complainant concerning the varying incidences of abuse the complainant had identified during different interviews would have demonstrated "inconsistencies, irregularities and the vagueness of the alleged offense," in depth questioning could also have solidified the complainant's testimony or could have exposed to the jury the specifics of multiple alleged assaults which were not raised during the State's direct examination. Petitioner cannot show counsel's failure to elicit testimony from the complainant concerning each and every allegation of abuse and emphasize such to the jury was not reasonable trial strategy. Further, the State sufficiently questioned the complainant in regards to where and when assaults occurred. Although the testimony elicited did not separate out and reference with detail each individual assault but, instead, demonstrated assaults which occurred at various ages and at various residences, petitioner cannot show it was not reasonable trial strategy for counsel not to revisit the testimony elicited. More importantly, petitioner has not indicated what specific cross-examination counsel should have done, the testimony he contends such an examination would have elicited, or how such testimony would have been beneficial. Further, petitioner has not shown counsel's challenging the complainant on cross-examination concerning her testimony that intercourse with petitioner "felt good," clearly an uncomfortable topic, would have been beneficial to the defense. Counsel's argument on closing that such statements were clearly not credible, considering the complainant's age at the time of the alleged assault, appears to have been a much more effective method of challenging the complainant's credibility. Counsel's closing argument allowed him to identify the testimony raised during trial and emphasize the reasons why the jury should acquit petitioner. Petitioner's arguments that counsel failed to adequately discredit the complainant's testimony or expose her bias due to deficiencies in cross-examination are, for the most part, conclusory and insufficient to overcome the presumption that counsel's examination of the complainant was

reasonable trial strategy.  The cross-examination of the minor victim of a sexual assault is a

tremendously sensitive area.  Vigorous and/or tough questioning may backfire.  Review of

counsel's cross shows it was not deficient.  Again, petitioner has not indicated what specific cross-

examination counsel should have made, the testimony he contends such examination would have

elicited, or how such testimony would have been beneficial to his defense.  Petitioner does not

demonstrate counsel's questioning was deficient, nor does petitioner convincingly show how any

additional questioning as suggested by petitioner would have changed the outcome of the trial.

During his examination of Gina Salazar, trial counsel elicited testimony that the

complainant's own mother did not believe the accusations against petitioner, had not seen any

indiction of abuse, and did not believe there would have been an opportunity for the abuse

described by the complainant to occur.  During cross-examination, the State did elicit testimony

from Gina Salazar that the complainant was a "good student," a "good girl," and was not known to

be a liar, however, such questioning was not objectionable.  Petitioner has not shown how trial

counsel "mishandled" witness Gina Salazar.  Petitioner's claims of ineffective assistance of counsel

should be DENIED.


### Petitioner's Right to Testify

Petitioner argues he was denied effective assistance of counsel because trial counsel

intentionally "interfered and prevented [] petitioner from testifying in his own behalf."  Petitioner

claims he expressed to counsel his desire to testify and avers he would have presented testimony of

his extended, day-to-day work schedule and activities showing he did not have the opportunity to

sexually assault the complainant as alleged.  Petitioner contends there was no reasonable strategic

benefit to be gained by counsel not putting him on the stand and, in fact, it was strategically

disadvantageous to petitioner because the jury panel had not been examined concerning any biases

they may have harbored against a defendant who did not testify.

The right to testify is a fundamental and personal constitutional right that only the criminal defendant himself may waive. *See, e.g., United States v. Hung Thien Ly*, 646 F.3d 1307, 1313 (11th Cir. 2011) ("Although often framed as a right to testify, it is more properly framed as a right to choose whether to testify. . . . This right to choose is personal as well as fundamental, and the defendant must make this decision himself." (*citing United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc))); *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002). However, petitioner's contention that he expressed, to counsel, his desire to testify during the trial of this case and that counsel refused to let him testify are unsubstantiated, conclusory statements. No independent evidentiary basis exists to support petitioner's allegation that he did not support and/or agree with counsel's decision not to put him on the stand, nor does petitioner provide any evidence that any such decision was not voluntary. Petitioner references "Exhibit - 1" as evidence that "[e]ven on the day of trial, it was conveyed to counsel, Petitioner's decision to testify," however, no such exhibit numbered as "Exhibit - 1" was attached to petitioner's memorandum.[9] This Court cannot grant federal habeas relief on petitioner's unsupported assertions.

Furthermore, counsel's recommendation whether a defendant should take the stand is reviewed as a part of counsel's trial strategy and constitutes a judgment decision which should not be easily condemned in hindsight. *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002). While petitioner asserts he should have been called to testify as to his work schedule and lack of opportunity to commit the alleged offense, he has not overcome the presumption that the decision not to call him to testify was reasonable trial strategy. Another attorney may or may not have

---

[9]Petitioner did attach an affidavit he executed on November 15, 2008 wherein he stated that "[o]n the morning of the trial . . . I ask counsel again about testifying he closed without calling me to the stand." Document 2-5, p. 23. Such document would not be conclusive evidence that petitioner insisted upon testifying but that counsel disregarded petitioner's demand.

pursued a different strategic course, but petitioner has not shown counsel's acts were not the result of a reasonable trial strategy that fell within the wide range of acceptable conduct.  *Cf. Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).

Lastly, the complainant's mother and grandmother were questioned concerning petitioner's lack of opportunity to commit the offense as alleged.  While petitioner's purported testimony would not necessarily have been totally cumulative, petitioner cannot show there was no reasonable trial strategy in choosing not to place him on the stand and subject him to rigorous cross examination by the State.  Nor has petitioner shown the state habeas court's denial of this claim was unreasonable. Petitioner's claim should be DENIED.

<u>Extraneous Offenses</u>

Petitioner argues he was denied effective assistance of counsel because trial counsel failed to object to the admission into evidence of extraneous offenses or otherwise seek a limiting instruction regarding the extraneous events.  Specifically, petitioner argues counsel should have objected to the complainant's testimony of "a series of unspecified events that were purported to have began in Fritch, Texas sometime during the 1998-1999 school year and continued through 2001 in Amarillo, Texas."  Petitioner contends the extraneous acts to which the complainant testified were "not representative of a particular incident or distinct offense" and, thus, had no material bearing on the offense on trial but, instead, merely implied "petitioner is a molester in general" and were not admissible under Rule 404(b) of the Texas Rules of Evidence.  Petitioner contends counsel "had a duty to object to any references to sexual misconduct where none of the alleged acts had any relevancy to any material facts, other than the Petitioner's character" and failure to do so constituted ineffective assistance of counsel.

Article 38.37 of the Texas Rules of Criminal Procedure, which addresses evidence of

extraneous offenses or acts, states:

> Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

Tex. Crim. Proc. art. 38.37 § 2 (2003 & 2006).  Consequently, in Texas, in a prosecution for aggravated sexual assault of a child, evidence of other sexual acts committed by the defendant against the same child are admissible.  Here, testimony of several acts committed by petitioner against the complainant were admitted.  Vol. 3 at 21-29.  Petitioner has not shown this testimony about other acts of sexual assault were inadmissible.  Consequently, petitioner has not demonstrated counsel was ineffective for failing object to such testimony.  It is noted that defense counsel did object when the State appeared to offer evidence of sexual misconduct by petitioner with the complainant's younger sister.  Vol. 3 at 79-81.  Petitioner's claim should be DENIED.

Petitioner also claims trial counsel was ineffective for failing to request a limiting instruction to the jury as to the extraneous acts.  For the reasons stated above, such a request would not have had merit.  Moreover, petitioner has not shown the jury considered those "extraneous" acts for an improper purpose, or that administering a limiting instruction would have altered the outcome of the proceedings in any way.  Petitioner's claim should be DENIED.

Petitioner also argues petitioner was ineffective because he failed to request the State elect the "overt act it would rely on for a conviction."  In Texas, the general rule is "where one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for

conviction." *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex.Crim.App.1988).[10]  In such single count, multiple transaction cases, the State can be required to elect which transaction (sexual act) it would rely upon to prove a single alleged offense because a defendant might find himself without notice as to which of a multitude of acts he might be called upon to defend.[11]  When the defendant makes a timely request at the close of the State's case, the trial court must order the State to make its election.  *Id*. at 772.  Absent such a motion by the defendant, the State is not required to make an election.  *Id*. at 771 n. 3.

Here, petitioner was charged with intentionally and knowingly causing his sexual organ to penetrate the sexual organ of A.M. when she was younger than 14 years of age in Potter County, Texas, "on or about the 1st day of June, 2003."  Although alleging only one act, the allegation required only that the State prove the above specified elements occurred on a date (1) prior to the

---

[10]An exception to the rule is where several acts of intercourse were committed by one continuous act of force and threats, and are part of the same criminal transaction.

[11]Additional reasons for the rule have been established by case law:

• to protect the accused from the introduction of extraneous offenses;

• to minimize the risk that the jury might choose to convict, not because one or more crimes were proved beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty. ("The jury may have taken both [offenses] into account, and have considered that one or the other was not sufficiently made out to warrant a conviction, but that both together convinced [it] of the guilt of the defendant....");

• to ensure unanimous verdicts, that is, all of the jurors agreeing that one specific incident, which constituted the offense charged in the indictment, occurred.

*Phillips v. State*, 130 S.W.3d 343, 349 (Tex.App.–Houston [14th]  2004).  There are other reasons why a defendant may seek an election:  "An election limits a defendant's criminal liability at that time and forces the State to prove, beyond a reasonable doubt, the single incident of criminal conduct that it elected to rely upon.  A defendant assessing this factor will undoubtedly analyze the strength of the State's evidence.  Though a defendant could still be prosecuted, at a later date, for the other offenses that the State did not elect to proceed under, an election may prove to be favorable because the State may be less inclined to pursue another prosecution in light of the additional resources that the State would have to expend.  And, if the State did choose to initiate a subsequent prosecution, then a defendant may be in a better position to reach a plea bargain agreement with the some knowledge of the strength of the State's case.  Finally, a defendant may be able to obtain a limiting instruction as to the extraneous offenses.  *Cosio v. State*, 353 S.W.3d 766, 775-76 (Tex.Crim.App. 2011).

presentment of the indictment, and (2) within the statute of limitations.[12]  *See* Tex. Code Crim. Proc. art. 21.02(6) (2003).  At trial, the complainant testified that when she was in the 4th through 6th grade, she would visit petitioner at the houses where he lived off of the boulevard in Amarillo, he would have "full sexual intercourse" with her, "having his penis inside of [her] vagina."  The complainant testified she did not visit petitioner regularly in Amarillo during that 3-year period, and that the sexual intercourse happened, although "[n]ot that often.  Just depending if people were around or not."  This testimony supports multiple incidents of sexual intercourse over a length of time.  Trial counsel did not request the court order the State to elect the specific act upon which it would rely for conviction.  Petitioner argues that due to this deficiency on the part of counsel, the State was not required to elect which act of penetration it would rely upon for conviction or to proceed on a specific act of intercourse, that if counsel had so moved, the court would have been required to force the State to make an election, and that had an election been required, "it would [have] defeated the State's entire case, as the State's evidence as a whole, [failed] to produce a corpus delicti, in that there [was] no specific incident, or overt act ever identified."  Petitioner concludes "a verdict of guilty was assured" by counsel's failure to request the court order the State to elect a specific act.

The purpose of election in a case where multiple offenses have occurred is to notify the defendant of the particular offense with which he is charged, to allow him to prepare a defense, and to obtain a unanimous verdict on the offense charged.  Here, petitioner was not denied notice of the alleged offense or surprised by the testimony concerning the allegations.  An election of a particular incident or date of offense was not necessary to enable petitioner to prepare a defense to the

---

[12]The State is not bound by the date alleged in the indictments:  the State's evidence just has to establish that the charged offenses occurred before the presentation of the indictment and that the alleged crimes were not so remote as to be barred by limitations.  *Sledge v. State*, 953 S.W.2d 253, 256 (Tex.Crim.App.1997).

allegation of sexual assault due to the nature of the testimony.

Moreover, "[a] defendant's decision to elect is purely strategic and may be waived or forfeited.  A defendant may choose not to elect so that the State is jeopardy-barred from prosecuting on any of the offenses that were in evidence.  Punishment would then also be limited to the charged offense only, and, given the jeopardy bar, there is no possibility that the defendant would receive an additional stacked sentence, based on any of the offenses in evidence, down the line.  But at the same time, the defendant would need to consider that the State would be permitted to proceed under several incidents of criminal conduct, as opposed to just one (or however many counts the State proceeds on), which may increase the State's chances of obtaining a conviction.  Also, a defendant would not be entitled to a limiting instruction concerning the jury's consideration of extraneous offenses." *Cosio v. State*, 353 S.W.2d 766, 775-76 (Tex.Crim.App. 2011).  There are many different considerations to take into account in deciding whether to require an election and petitioner has failed to show counsel's decision not to require an election was not a strategic decision.

Moreover, petitioner has not demonstrated he was prejudiced by counsel's failure to request the State make an election.  Not only is it unclear whether counsel would have prevailed had he requested the trial court force the State to elect a single act, petitioner has not shown that if counsel had requested the State be required to elect a particular act, that the State could not have done so, or that election of a particular act would have resulted in a different outcome at trial rather than simply reinforcing the State's case.  While the complainant's testimony was not detailed, it was sufficient to establish that the last time petitioner had full sexual intercourse with her was when she was eleven or twelve years old.  Vol. 3 at 25-29.  Even though no specific date was established, the State could have specified that particular event as the alleged offense charged and shown the event

occurred within the period covered by the applicable statute of limitations.  Lastly, petitioner has

not shown the state habeas court's denial of this claim was unreasonable.  Petitioner's ground

should be DENIED.

## Directed Verdict

Petitioner argues he was denied effective assistance of counsel because trial counsel failed

to move for a directed verdict after the State rested its case "when it was apparent that the State

could not present any evidence that could be remotely said to support the specific offense alleged in

the indictment."  Specifically, petitioner contends the State failed, in its case-in-chief, to sustain its

burden of proof because the "complainant never testified to a single event or otherwise described a

particular overt act that could be said to be the offense in the indictment."  Petitioner concludes

counsel's failure to move for a directed verdict was objectively unreasonable due to the State's

"failure to even address the offense alleged in the indictment, or produce any evidence that could be

said to be the offense charged."

Petitioner's contention that narrow testimony describing a particular event on a specified

date rather than an undated specific act was necessary to prove the allegation in the indictment is

without merit.  Under Texas law, the act identified when the complainant was eleven or twelve

years old was sufficient to show the crime occurred "on or about" June 1, 2003.  Petitioner has not

identified a valid basis upon which trial counsel could have moved for a directed verdict, nor has

petitioner shown such a motion would have been granted by the trial court.  In fact, at the close of

the State's case, there was sufficient evidence of guilt to support a guilty verdict and there is no

reason to believe a motion for a directed verdict would have been granted.  Counsel is not required

to make futile motions to serve his client effectively.  Petitioner has not demonstrated counsel's

failure to move for a directed verdict at the close of the State's case was deficient, or that petitioner

was prejudiced by any failure to make such a motion.  Petitioner's claim should be DENIED.

<u>Closing Argument</u>

Petitioner argues he was denied effective assistance of counsel because trial counsel did not give a "reasonable closing summation of the evidence in relation to the State's burden of proof and the total absence of any testimony identifying any specific incident that was sufficient to constitute the offense charged in the indictment."  Specifically, petitioner maintains counsel was ineffective during final argument because he did not argue it was necessary for the State to prove a specific incident of sexual assault or argue the State failed to meet this burden because the evidence never connected any of the elements of the offense "to any particular incident."  Petitioner concludes the failure to argue such allowed the jury to believe "testimony of a general sexual assault was sufficient to support a conviction for a specific offense as alleged in the indictment."

The court has reviewed the closing argument made by defense counsel and finds not only did such argument fall within the range of reasonable trial strategy and tactics, such argument was thorough and effective (noting the jury was originally unable to reach a unanimous decision).  The defense in this case was not about *when* the offense occurred, rather it was that no sexual assault ever occurred.  The defense was that the complainant's testimony was not credible and that petitioner never sexually assaulted her.  Counsel challenged the reliability of the complainant's claims by pointing out inconsistencies in the complainant's accusations, arguing the incredulity of her detailed recollections from a very young age and her accusations against another man, and noting the lack of additional physical evidence to support her claims and the absence of any indication of abuse to those close to her.  Counsel also challenged the validity of the nurse's testimony and bolstered the testimony of the complainant's mother and grandmother that the circumstances did not allow an opportunity for such an assault to take place.  Counsel emphasized a

reasonable doubt existed when the jury considered the entire case.  Counsel was not deficient for failing to argue the State did not prove a specific and exact incident in his closing argument, nor was he deficient in failing to argue the State had not met its burden to prove such.  Petitioner's claim of ineffective assistance during closing argument should be DENIED.

*Allen* Charge

During its deliberation at the guilt-innocence phase of petitioner's trial, the jury informed the trial court it could not come to a unanimous verdict.  Vol. 3, at 111.  In response, the trial court proposed to submit an *Allen*[13] charge to the jury.  Neither the prosecution or the defense had any objection to such a charge.  Upon the jury's return, the trial court stated:

> Ladies and gentlemen of the jury, I have your note sent to me by your foreman, Mr. Cooksey.  It says that you cannot come to a unanimous verdict.  This happens sometimes in trials, and it's my duty to give to you what we call an *Allen* charge.  And Mr. Schofield, I'm sure, is very familiar with it, but I've chosen to read it to you in person so that I can convey my emphasis on it.  Most of the time – in fact, every other time I've ever given it, I've just sent it in there and let y'all read it to yourselves, but I've chosen to bring you back in here because I want to emphasize how important it is that you reach a verdict if you can.

> Here's what we call the *Allen* charge.  If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge you.  The indictment will still be pending and it is reasonable to assume that the case will be tried again before another jury at some future time.  Any such future jury will be empaneled in the same way this jury was empaneled and will likely hear the same evidence which has been presented to this jury.  The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.  With this additional instruction, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of your jury, if you can do so without doing violence to your conscience.  Don't do violence to your conscience, but do continue deliberating.  Okay.  Thank you.

Vol. 3, at 111-12.  Petitioner again notes that this was the "second hung jury" on these charges and

---

[13]The phrase " Allen charge" originates from *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), and generally refers to a judge's instructions to a seemingly-deadlocked criminal-trial jury, encouraging continuing trying to reach a verdict.

suggests that extra care should have been given to ensure that any *Allen* charge given was not

unduly coercive or impermissibly presented.  Petitioner then argues the trial court "took unfair

advantage" of the situation when it "abandoned [its] traditional method of instructing the jury" and,

instead, personally read the instruction to the jury.  Petitioner contends the trial court's actions and

announcement of why he took such actions was "nothing more than a plea for sympathy for the

state."  Petitioner also notes the trial court "wholly failed to remind the jurors of their duty to hold

the state to its burden of proof" in its *Allen* charge thereby allowing the jury to disregard the State's

burden of proof.  Petitioner also contends the above-quoted *Allen* charge "tend[ed] to encourage a

verdict on a majority rather than a unanimous decision" or could have been reasonably interpreted

as an instruction to follow the majority rather than making an independent determination.  Petitioner

concludes defense counsel should have objected to the trial court's method of delivery of the

charge, as well as the substance of the charge, and that failure to do so constituted ineffective

assistance of counsel.

   While the undersigned finds the trial court's comments and explanation of his decision to

read the *Allen* charge may have been unnecessary, petitioner has not shown such introductory

statements had an unduly coercive effect on the jury, that defense counsel had a valid basis upon

which to object to the court's statements, or that counsel was deficient in failing to make an

objection to the court's statements.  Secondly, there is no requirement that an *Allen* charge remind

jurors of the State's burden of proof in a criminal case.  The jury had already been instructed as to

the burden of proof and petitioner has not identified any non-speculative basis upon which to

believe the jury disregarded the State's burden or the level of proof simply because the *Allen* charge

did not again remind the jury of such.  In fact, jurors are presumed to follow their instructions.

Lastly, the undersigned also does not find the language of the above-quoted *Allen* charge authorized

or encouraged a non-unanimous verdict or instructed the holdout jurors to follow the vote of the majority rather than making their own independent determinations.  Petitioner has not demonstrated defense counsel was deficient in failing to object to the court's explanatory statements or the *Allen* charge itself.  Nor has petitioner demonstrated the state habeas court's denial of these claims was unreasonable.  Petitioner's claim of ineffective assistance of counsel should be DENIED.

<u>Motion for New Trial or Appeal</u>

Petitioner argues he was denied effective assistance of counsel because trial counsel failed to move for a new trial, file a notice of appeal on petitioner's behalf, or request to withdraw as counsel.  Petitioner also contends counsel was ineffective because he failed to advise petitioner regarding the need to file a notice of appeal.

In its Judgment dated September 19, 2006, the state trial court stated "the defendant was informed of the defendant's right to appeal and that the defendant was entitled to have counsel appointed by the Court to perfect an appeal if the defendant could not afford to employ counsel for said appeal, and the defendant stated that the defendant did not wish to appeal this case and did not wish to have counsel appointed."  CR at 52.  The undersigned notes, however, that the transcript of the proceedings does not reflect such a colloquy between the trial court and petitioner.  Vol. 3 at 137-38.  Regardless, petitioner apparently did wish to appeal despite the statements included in the Judgment.  *See* Letter from Petitioner dated September 26, 2006, October 4, 2006 and October 13, 2006.  CR at 55, 58 and 62.  On October 6, 2012, trial counsel was appointed as appellate counsel.  On October 11, 2006, a pro se notice of appeal was docketed on petitioner's behalf and the case was forwarded to the state appellate court.  On October 16, 2006, after learning trial counsel did not do appellate work, the trial court appointed new counsel as petitioner's appellate counsel.  CR 60-61.  On January 24, 2007, appellate counsel filed a first amended notice of appeal and prosecuted the

appeal.

Considering petitioner's waiver, in open court, of his right to appeal and for appointed appellate counsel, the Court would find it difficult to find any failure of trial counsel to file a notice of appeal or to further advise petitioner of the need to file a notice of appeal was deficient.  In any event, petitioner suffered no prejudice because his appeal proceeded in due course.

 To the extent petitioner claims counsel was deficient for failing to file a motion for new trial, not only has petitioner failed to show there is any right to counsel at the motion for new trial stage, *see Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003), petitioner has failed to show how he was prejudiced by the absence of a motion for new trial.  Similarly, petitioner has failed to show how trial counsel's failure to withdraw as counsel prejudiced him in any way.

Further, the state habeas court necessarily found petitioner's claims were without merit.  Such findings are entitled to deference and will not be disregarded without petitioner meeting the AEDPA standards for doing so.  Petitioner has not made such a showing.  This ground alleging ineffective assistance of counsel should be DENIED.

## VI.
## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his answer respondent has set forth the proper standard under *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) and its progeny for reviewing claims of ineffective assistance of counsel on appeal in federal habeas corpus proceedings.  Petitioner's claim is analyzed under that standard.

## Grounds on Appeal

Petitioner was represented by new counsel on appeal.  Counsel filed an *Anders* brief stating the facts developed by the evidence and explaining why he could not, in good faith, argue the merits

of any potential grounds of error.  Petitioner filed a *pro se* appellate brief arguing legal and factual insufficiency of the evidence along with other claims.  The appellate court found the jury, as the exclusive judge of the credibility of the witnesses, chose to believe the incriminating testimony of the State's witnesses rendering any challenge to the sufficiency of the evidence without merit.  By this ground, petitioner contends he was denied effective assistance of counsel when appellate counsel filed an *Anders* brief on appeal rather than arguing the legal insufficiency of the evidence to support the judgment.

Appellate counsel is not required to argue every conceivable issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 749 (1983).  In fact, effective counsel should focus an appeal on the strongest potential issues rather than presenting all conceivable arguments of error.  Nor is appellate counsel required to consult with the defendant about the legal issues to be presented on appeal.  *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973).  Appellate counsel's failure to raise certain issues on appeal does not necessarily deprive an appellant of effective assistance of counsel.  *Id.*  Here, appellate counsel found there were no grounds with arguable merit and the state appellate court agreed.  Nonetheless, the sufficiency of the evidence issue was raised before the state appellate court, albeit by petitioner's *pro se* brief, and found to be without merit.  Petitioner has not demonstrated appellate counsel was deficient for failing to raise a non-meritorious ground on appeal, nor has he demonstrated he was prejudiced by any failure of appellate counsel to raise a ground of insufficiency, *i.e.*, petitioner cannot show the result of his appeal would have been different if appellate counsel had raised a sufficiency of the evidence claim.  Petitioner's ground should be DENIED.

<u>Right to File Petition for Discretionary Review</u>

Petitioner contends he was denied effective assistance of counsel when appellate counsel

failed to notify petitioner of his right to file another petition for discretionary review (PDR) appealing the state intermediate appellate court's substituted decision.  Initially, the Court notes no constitutional right is implicated by an attorney's failure to inform a defendant of his right to file a PDR.  *Olalumade v. Johnson*, 220 F.3d 588, 2000 WL 960583 at *2 (5th Cir. 2000).  Even so, on appeal, the state appellate court, citing Tex. R. App. P. 48.4, noted counsel had certified that a copy of the motion to withdraw had been served on petitioner and that counsel <u>had</u> informed petitioner of his right to file a petition for discretionary review as required by *Ex Parte Owens*, 206 S.W.3d 670 (Tex.Crim.App. 2006).  Petitioner has not demonstrated counsel was deficient in failing to advise petitioner of the right to file a PDR appealing a state appellate court decision.  Having filed a previous PDR, petitioner was clearly aware of the right to appeal an intermediate appellate court's decision.  Petitioner has not shown he was prejudiced by counsel's failure to again inform petitioner of the right to appeal by way of a PDR.  Moreover, the state habeas court denied petitioner's ground on the merits.  Petitioner has not shown the state habeas court's denial of this ground was unreasonable.  Petitioner's claim of ineffective assistance is without merit and should be DENIED.


## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner DAVID RUBEN SALAZAR be DENIED.


## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 10th day of August 2012.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).